**PHILLIP DEFOE, Plaintiff/Appellee**

**v.**

**HERMAN LESLEY, Defendant/Appellant**

Civil No. 1980/34

District Court of the Virgin Islands

Div. of St. Croix

January 27, 1981

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

WOJCIECH P. MOKOWSKI, ESQ., Legal Services, Frederiksted, St. Croix, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## OPINION

This case is before us on appeal from a judgment of the Territorial Court of the Virgin Islands.

On July 11, 1978, plaintiff Phillip Defoe filed a complaint seeking damages for injuries suffered when he was attacked with a cutlass by the defendant, Herman Lesley. The altercation grew out of a game of dominoes. Defendant was personally served with process on September 14, 1978. Defendant relates the sad tale in his affidavit of having visited several attorneys, ending up at the Frederiksted office of Legal Services. At the latter office the attorney whom the defendant tried to contact was off-island. At this point Mr. Lesley evidently gave up on the legal fraternity, and never filed an answer. He claims to have been of the belief that the court would notify him when the case was to be heard.

A default judgment was entered against Mr. Lesley on March 22, 1979, for $3,750.00 plus costs and $400.00 attorney's fees. On August 14, 1979, a writ of execution issued on the judgment. After receiving the writ, Mr. Lesley was, at last, successful in obtaining counsel. On September 12, 1979, nearly a year after the service of process upon him in the case, defendant filed a motion to set aside the entry of default judgment and to recall the writ of execution.

In an order dated November 6, 1979, the trial court vacated the default judgment on condition that defendant post a bond in the full amount of the judgment plus costs and attorney's fees. Defendant's motion for reconsideration of the requirement of the bond was denied. This appeal followed.

The question before this court is whether the Territorial Court abused its discretion in exacting a bond for the entire amount of the judgment and costs as a prerequisite to vacating the default judgment. For the reasons stated below, we remand the case to the court

below for a determination of whether, in this particular situation and for this particular defendant, the amount of security required was improper as an "impossible" condition to the reopening of the default judgment.

■ Under Rule 55(c) Fed. R. Civ. P. the court may for good cause shown set aside a default judgment in accordance with Rule 60(b) Fed. R. Civ. P. That rule provides for relief "upon such terms as are just." The terms in the case before us appear to be unduly onerous for this particular defendant. Mr. Lesley's affidavit states that he earned $150 per week take-home pay in November 1979 while supporting a wife and four children. He has no bank account, nor assets other than a 1971 Plymouth automobile. His statement that he is unable to post security of over $4,000 is believable.

Thorpe v. Thorpe, 364 F.2d 692 (C.A.D.C. 1966) discusses the question of the appropriate amount of security for a court to require in vacating a default judgment.

> The condition most commonly imposed is that the defendant reimburse the plaintiff for costs—typically court costs and attorney's fees—incurred because of the default. Appellee does not allege, nor is there any indication, that appellee suffered prejudice from appellant's default over and above costs customarily incident to pressing a default judgment.
>
> It may also be appropriate, in some cases, for the defendant to be required to post bond to secure the amount of the default judgment. 364 F.2d at 694.

Cf., also, Wokan v. Alladin International Inc., 485 F.2d 1232 (3d Cir. 1973) citing Thorpe.

In Thorpe, the District Court required the appellant to place in escrow not merely the amount of the default judgment, but rather the maximum amount demanded by appellee in her complaint. The Court of Appeals found that such an extraordinary condition must be accompanied by supporting findings to show that it represents a reasonable exercise of discretion.

■ In the instant case appellee Defoe makes no claim of prejudice flowing from Lesley's default over and above the incidental costs of the court action. Requiring the posting of security in the amount of the default judgment is not per se an extraordinary condition according to Thorpe. While the opinion in Thorpe implied that only in some cases would the entire amount of the default

judgment be appropriate as security, it offers no guidance as to what factors are significant in this decision.

■ Standing alone then, the amount of security required in this case is not impermissible. However, Mr. Lesley's affidavit states that he is financially unable to post that amount of security, a situation similar to that presented in Thorpe where appellant alleged that "he does not have the cash to put up." The court wrote:

> If appellant's claim that he simply is unable to comply with the conditions imposed is true, serious questions are raised, question having an aura of denial of due process of law. See Societe Internationale, etc. v. Rogers, 357 U.S. 197, 209–10, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), where the Supreme Court stated, in another context, that imposition of an "impossible" condition of a litigant's right to a trial on the merits raises constitutional difficulties. 364 F.2d at 695.

Justice Harlan's language in Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) applies here:

> Our cases further establish that a statute or a rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question. Thus, in cases involving religious freedom, free speech or assembly, this Court has often held that a valid statute was unconstitutionally applied in particular circumstances because it interfered with an individual's exercise of those rights.
>
> No less than these rights, the right to a meaningful opportunity to be heard within the limits of practicality, must be protected against denial by particular laws that operate to jeopardize it for particular individuals. See Mullane v. Central Hanover Tr. Co., 339 U.S. 306 (1950); Covey v. Town of Somers, 351 U.S. 141 (1956) . . . .
>
> Just as a generally valid notice procedure may fail to satisfy due process because of the circumstances of the defendant, so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due. 401 U.S. at 379–80.

310

The cost requirement imposed by the Territorial Court may have effectively foreclosed Lesley's opportunity to be heard on the merits of this case. As noted by Justice Harlan, an ordinarily valid cost requirement can operate as a denial of due process in a particular situation. Here the bond requirement would seem to be, for all practical purposes, impossible of fulfillment. If such is the case, the court withdrew with one hand what it gave with the other.

■ The Due Process Clause of the Fifth Amendment of the Constitution of the United States, applicable to the Virgin Islands under the Revised Organic Act of 1954, § 3, requires that "at a minimum, absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Boddie v. Connecticut, supra, 401 U.S. at 371. This "meaningful opportunity to be heard" takes different forms in different situations. In Boddie, the Supreme Court ruled that the fee requirement for divorce in Connecticut acted as a denial of due process for indigents. The court analogized the situation of the plaintiff seeking a divorce to the defendant in a lawsuit. Both parties are "forced" to involve themselves in the judicial process, and thus deserve particular due process protection.

The Territorial Court in the instant case had discretion to refuse appellant's request to vacate the default judgment. It could have found, consonant with due process, that the defendant Lesley's failure to make a timely appearance was inexcusable. On the record, though, Lesley appears to be the epitome of the defendant for whom due process protection is necessary. While his abandonment of a process in which he was shuffled from attorney to attorney is not to be condoned, the frustration and alienation he must have felt strikes a responsive chord in anyone not inured to the byzantine nature of the legal system. The Territorial Court, perhaps, revealed its sympathy towards this problem in granting the motion to vacate the default.

■ The Court having granted the motion, due process required that the defendant be given a "meaningful opportunity" to proceed to a trial on the merits. Imposing a cost requirement with which a defendant cannot comply is, in such circumstances, a denial of due process. Such a cost requirement serves no overriding state interest.

■ Counterbalancing the trial court's understanding towards Lesley was its acknowledgement that he had simply abandoned his

311

attempt to answer in the case. Factors to be considered in determining the "good cause" necessary to set aside a default judgment are that movant had a good excuse for the default, a meritorious defense, and moved to set aside default within a reasonable time. Meyer v. Lavelle, 64 F.R.D. 533 (D.C. Pa. 1974); Spica v. Garcynski, 78 F.R.D. 134 (D.C. Pa. 1978). In the hearing on the motion for reconsideration of the amount of the bond, the court stated that it did not find either excusable neglect or a fully articulated claim of a meritorious defense yet it had set aside the default. Conditioning the vacation of judgment on security for the full amount of judgment appears to have been a balancing of the general position that a judgment should be based on a trial on the merits with a sanction for Lesley's neglect of his obligation.

For example, in relation to the amount of bond, the trial court said:

> I think he has got to recognize the fact that, what exists today was brought upon himself by his own failure to act, by not completing arrangements with a lawyer, which perhaps would be an appealing factor in my consideration. (Tr. p. 8.)

The guideline of "just terms" mentioned in Rule 60(b) Fed. R. Civ. P. for relief from judgment allows for broad discretion of the court in imposing such conditions as it deems fit. Wright and Miller, FEDERAL PRACTICE AND PROCEDURE Vol. 11 § 2857. Thus, this court finds no improper action in the vacating of the default judgment without a finding of factors of excusable neglect or meritorious defense, and would find no impropriety in the requirement of security for full amount of the judgment, but for the defendant's financial affidavit. It is the particular financial plight of this defendant, in the situation of a default judgment having been granted with an allegedly "impossible" condition attached, which gives rise to the due process question here.

On remand, then, the focus will be on appellant's financial status. It is not for this court to name a dollar amount that would be appropriate here. We do insist, however, that given the vacated default judgment, Lesley's financial situation be taken into account in determining any bond requirement. Lesley must be given a realistic opportunity to defend on the merits. The trial court retains its reasonable discretion to fashion "just terms." Appellant Lesley has evinced this willingness and ability to post a bond of $500. While that amount barely covers the award of attorneys fees, it may be the

highest amount that can realistically be required of this defendant, his strained circumstances considered.

In a sense, the Territorial Court's cost requirements were quite lenient. The trial judge did not require Lesley to reimburse Defoe for attorney's fees expended so far, but only to post bond. As noted in Thorpe v. Thorpe, supra, the common practice is to require the defendant to reimburse the plaintiff for the costs of the default—typically court costs and attorney's fees. This procedure has the attraction of penalizing the defendant "guilty" of the default, and restoring the "innocent" plaintiff to his financial position before the default. Yet while the posting of bond as opposed to reimbursement may be better for defendant in that if he prevails he need never pay plaintiff, a bond requirement which he cannot satisfy is beyond the spectrum of harsh and easy terms. Here lack of money forecloses justice. At the line where such a cost requirement shifts from onerous to "impossible", there due process disappears.

## JUDGMENT

This matter came on before the Court on appeal from a judgment of the Territorial Court of the Virgin Islands. The Court having heretofore entered its opinion on this appeal, and the said Court being fully satisfied in the premises,

IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the Territorial Court of the Virgin Islands in this cause be, and hereby is, VACATED, and the cause is hereby remanded to the Territorial Court of the Virgin Islands for further proceedings consistent with the opinion of this Court.